UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2025 AUG 28  AM 9: 45

CLERK

BY _____
DEPUTY CLERK

BRIAN T.,                          )
                                   )
            Plaintiff,             )
                                   )
      v.                           )    Case No. 2:24-cv-00868
                                   )
FRANK BISIGNANO,                   )
Acting Commissioner of            )
Social Security,                   )
                                   )
            Defendant.             )

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR AN ORDER
REVERSING THE DECISION OF THE COMMISSIONER AND
DENYING THE COMMISSIONER'S MOTION TO AFFIRM**
(Docs. 13 & 16)

Plaintiff Brian Tirrell is a claimant for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI") under the Social Security Act ("SSA"), and brings

this action pursuant to 42 U.S.C. § 405(g) to reverse the decision of the Social Security

Commissioner (the "Commissioner") that he is not disabled.[1] (Doc. 13.) The

Commissioner moves to affirm. (Doc. 16.) Plaintiff replied on March 18, 2025, (Doc.

17), at which point the court took the pending motions under advisement. Plaintiff claims

the following errors in Administrative Law Judge ("ALJ") Dory Sutker's determination:

---

[1] Disability is defined as the inability "to engage in any substantial gainful activity by reason of
any medically determinable physical or mental impairment which can be expected to result in
death or which has lasted or can be expected to last for a continuous period of not less than
[twelve] months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant's "physical or
mental impairment or impairments" must be "of such severity" that the claimant is not only
unable to do any previous work but cannot, considering the claimant's age, education, and work
experience, engage in any other kind of substantial gainful work which exists in the national
economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

(1) that "the reference to performing one[-] to two[-] step tasks can be vague and is not well-defined with the [A]gency's rules and regulations[,]" (Doc. 6 at 960); (2) that the vocational expert's testimony was consistent with Agency policy; and (3) that the limitation in Plaintiff's RFC that he could "stoop less than occasionally" left only one existing job that he could perform. (Doc. 6 at 955.) Plaintiff contends the ALJ's errors tainted the proceedings and cannot be considered harmless. The Commissioner counters that all errors were harmless because there are positions in the national economy in sufficient numbers that Plaintiff can perform.

Plaintiff is represented by David F. Chermol, Esq., and Alexandra M. Jackson, Esq. Special Assistant United States Attorney Vernon Norwood represents the Commissioner.

## I.    Procedural History.

Plaintiff filed his applications for DBI and SSI on May 26, 2019, alleging disability beginning January 21, 2019, based on spondylosis, spondylolisthesis, depression, anxiety, post-traumatic stress disorder ("PTSD"), and myocardial infarction. (Doc. 6 at 15.) After Plaintiff's claim and request for reconsideration were denied, Plaintiff timely filed a request for a hearing, which was held before ALJ Sutker on July 23, 2020. Plaintiff appeared by telephone, was represented by counsel, and testified. Vocational Expert ("VE") Michelle Bishop also testified.

On August 28, 2020, ALJ Sutker issued an unfavorable decision, which Plaintiff administratively appealed. The Appeals Council denied review on January 22, 2021, and Plaintiff filed a Complaint in this court on March 23, 2021. *Brian T. v. Comm'n of Soc. Sec.*, No. 2:21-cv-87 (D. Vt. Mar. 23, 2021). On October 13, 2021, Plaintiff filed a motion to reverse the Commissioner's decision, and on December 6, 2021, the Commissioner moved to affirm. The court granted Plaintiff's motion on June 8, 2022, and ordered a remand for further proceedings consistent with its Opinion and Order. On July 25, 2022, the Appeals Council issued an order remanding the case and directing that subsequent claims for Title II and Title XVI disability, filed on March 30, 2021, be consolidated with the remanded case. The Appeals Council's remand order instructed the

2

ALJ to "further consider evidence related to the claimant's stroke . . . and offer the claimant . . . a hearing to address any additional evidence or take further action to complete the administrative record[.]" (Doc. 6 at 949.)

ALJ Sutker held a hearing via telephone on November 10, 2022, as well as supplemental telephone hearings on July 5, 2023 and April 16, 2024. Plaintiff appeared and was represented by counsel. During these hearings, Plaintiff testified, as did Medical Expert ("ME") Sanjay Krishnan, M.D., and VE Karyl Kuuttila. On May 21, 2024, ALJ Sutker issued an unfavorable decision, which became the final decision of the Commissioner on July 20, 2024. Plaintiff has appealed that decision to this court.

## II.    ALJ Sutker's May 21, 2024 Decision.

Plaintiff was twenty-nine years old at the onset date of his alleged disability. He has at least a high school education and has not engaged in substantial gainful activity since the onset of his disability. ALJ Sutker determined Plaintiff has past relevant work as a security guard, laborer, maintenance supervisor, and in maintenance repair.

In order to receive DBI or SSI under the SSA, a claimant must be disabled on or before the claimant's last date insured. A five-step, sequential evaluation framework determines whether a claimant is disabled:

(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a[n RFC] assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).

"The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of proving his or her case at [S]teps [O]ne through [F]our of the sequential five-step framework established in the SSA

3

regulations[.]" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks and citation omitted). At Step Five, "the burden shifts to the Commissioner to show there is other work that [the plaintiff] can perform." *McIntyre*, 758 F.3d at 150 (alterations adopted) (internal quotation marks omitted).

At Step One, ALJ Sutker determined Plaintiff had met the SSA's insured status requirements through December 31, 2023, and that he had not engaged in substantial gainful employment since January 21, 2019, the alleged onset date. At Step Two, she concluded that Plaintiff had the following severe impairments: lumbar degenerative disc disease, obesity, hemochromatosis, depressive disorder, and anxiety disorder. In addition to these severe impairments, ALJ Sutker found Plaintiff suffered from a stroke and related conditions, neck pain, and a headache disorder. She concluded the stroke and related conditions were not severe because they "do not more than minimally limit his ability to perform basic work activities." (Doc. 6 at 953.) Plaintiff's neck pain and headache disorder were resolved after he underwent wisdom teeth extraction. ALJ Sutker thus concluded they were not severe.

At Step Three, ALJ Sutker determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings. With regard to his non-mental impairments, the ALJ concluded that Plaintiff's lumbar spondylolisthesis did not meet or medically equal the severity requirements of Listing 1.15 because Plaintiff "does not require canes, crutches, a walker, or any other assistive device." *Id.* Nor did his hemochromatosis meet or medically equal the severity requirements of Listing 7.08 because Plaintiff experienced no complications requiring hospitalization. ALJ Sutker found Plaintiff's obesity to be a severe impairment, and while it "does not medically equal any listing, the residual functional capacity incorporates the consideration given to the impact of obesity on the claimant's functional limitations." *Id.* at 953-54.

Regarding Plaintiff's mental impairments, ALJ Sutker found that Plaintiff had moderate limitations in three areas of mental functioning: (1) interacting with others; (2) concentrating, persisting, or maintaining pace; and (3) adapting or managing himself.

4

She also determined Plaintiff had a mild limitation in understanding, remembering, or applying information. The ALJ concluded that the severity of Plaintiff's mental impairments did not meet or medically equal Listings 12.04, 12.06, and 12.15. In so ruling, the ALJ found that the "paragraph B" criteria were not satisfied because Plaintiff's mental impairments did not "cause at least two 'marked' limitations or one 'extreme' limitation[.]" *Id.* at 954. ALJ Sutker also found that the "paragraph C" criteria were not satisfied because:

> [T]he record does not establish that the claimant has achieved only "marginal adjustment" in spite of ongoing medical treatment, mental health therapy, or psychosocial support(s), meaning that the claimant has minimal capacity to adapt to changes in environment or demands that are not already part of [Plaintiff]'s daily life. There is no evidence that changes or increased demands have led to a deterioration in [Plaintiff]'s functioning, such as evidence that [Plaintiff] became unable to function outside of the home or a more restrictive setting without substantial psychosocial supports.

*Id.* at 955.

At Step Four, the ALJ determined Plaintiff had the RFC to perform light work,[2] except that:

> [He] can never climb ladders, ropes, or scaffolds. He can rarely crawl (meaning no more than once or twice a day). [Plaintiff] can stoop less than occasionally (meaning no more than one hour in an eight-hour workday). [Plaintiff] can occasionally climb ramps and stairs, and occasionally balance, kneel, and crouch. He can never be exposed to extreme cold and he can tolerate no more than moderate noise levels. [Plaintiff] can understand, remember, and carry out simple instructions and perform simple tasks for two-hour blocks of time throughout the workday, consistent with regularly scheduled breaks and lunch periods. [Plaintiff] needs an environment without strictly timed tasks or belt work such as a

---

[2] "Light work involves lifting no more than [twenty] pounds at a time with frequent lifting or carrying of objects weighing up to [ten] pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

factory assembly line. He needs an environment where tasks are generally performed in a solitary manner, but he can hand of[f] product or objects to coworkers. Within such a setting, [Plaintiff] can collaborate with supervisors on routine matters and adapt to occasional routine changes.

*Id.*

The ALJ rejected limits based on one- or two-step tasks, explaining:

[T]he reference to performing one[-] to two-step tasks can be vague and is not well-defined with the agency's rules and regulations. . . . Instead, the agency specifically considers terms such as "simple" or "detailed" in making these evaluations. Therefore, the undersigned . . . utilizes policy compliant language in the above-described residual functional capacity.

*Id.* at 960 (internal citation omitted).

At the July 5, 2023 hearing, ALJ Sutker asked the VE hypothetical questions regarding the jobs available to a person of Plaintiff's age and educational level, with his past relevant work and RFC. The VE opined that "[a]ll past relevant work whether it[ is] generally performed and it[ is] actually performed would be precluded either based on the exertional limitations of the hypothetical individual or the non-exertional limitations of the hypothetical individual for simple, routine, repetitive work." *Id.* at 1049. When asked whether there was any substantial gainful activity an individual with Plaintiff's RFC could perform, VE Kuuttila identified mailroom clerk, routing clerk, and small parts assembler.[3] She also identified three sedentary positions: dowel inspector, optical assembler, and bench hand.

Considering Plaintiff's age, education, work experience, and RFC, ALJ Sutker determined at Step Five that jobs exist in significant numbers in the national economy which Plaintiff could perform, including light work as a mail room clerk (100,000 jobs nationally), a routing clerk (35,000 jobs nationally), a garment packager (35,000 jobs nationally), or a small parts assembler (100,000 jobs nationally), and sedentary work as a

---

[3] VE Kuuttila initially identified garment packager as a potential light work job option. When asked about jobs available to a person with Plaintiff's RFC who is limited to standing for two out of eight hours, VE Kuuttilla eliminated the garment packager position.

6

dowel inspector[4] (12,000 jobs nationally), an optical assembler (15,000 jobs nationally), or a bench hand (40,000 jobs nationally).

> ALJ Sutker addressed Plaintiff's GED reasoning levels as follows:
>
> [C]onsistent with national policy, the S[SA] does not consider GED or Aptitudes to identify the demands of work for disability adjudication in the SSA disability programs. The GED ratings do not correspond with the SSA's regulatory definitions of unskilled, semiskilled, and skilled work. The undersigned finds no reason to include GED ratings or reasoning levels in the residual functional capacity.

*Id.* at 963. The ALJ found Plaintiff was not disabled.

## III.   Conclusions of Law and Analysis.

### A.   Standard of Review.

In reviewing the Commissioner's decision, the court "conduct[s] a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013) (citation and internal quotation marks omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks omitted).

It is the Commissioner who resolves evidentiary conflicts, and the court "should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *see also Aponte v. Sec'y, Dep't of Health & Hum. Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984) (noting "genuine conflicts in the medical evidence are for the Secretary to resolve"). Even if the court could draw different conclusions after an

---

[4] Plaintiff asserts, and the Commissioner does not dispute, that the dowel inspector position no longer exists in significant numbers in the national economy. *See Morsy v. Comm'r of Soc. Sec.*, 2023 WL 6385762, at *5 (E.D.N.Y. Sept. 29, 2023) (stating that "the Washington Post reported recently that a dowel inspector is a . . . job that virtually no longer exists in the United States[]") (alterations adopted) (internal quotation marks omitted) (quoting Lisa Rein, *Social Security Denies Disability Benefits Based on List with Jobs from 1977*, Wash. Post (Dec. 27, 2022, 10:15 a.m.), https://www.washingtonpost.com/politics/2022/12/27/social-security-job-titles-disabled-applicants-obsolete/).

7

independent review of the record, the court must uphold the Commissioner's decision when it is supported by substantial evidence and when the proper legal principles have been applied. *See* 42 U.S.C. § 405(g); *McIntyre*, 758 F.3d at 149 ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.").

The court does not defer to the Commissioner's decision "[w]here an error of law has been made that might have affected the disposition of the case[.]" *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted) (first alteration in original). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Jason F. v. O'Malley*, 2024 WL 1756547, at *4 (D. Vt. Apr. 23, 2024) (internal quotation marks omitted) quoting *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009)).

## B.    Whether the ALJ Erred by Not Recognizing Agency Definitional Language.

### 1.    The ALJ's One- to Two-Step Determination.

Plaintiff challenges ALJ Sutker's evaluation of the opinions of State Agency reviewing psychologists, Ellen Atkins, Ph.D., and John Petty, Psy.D., specifically her statement that "the reference to performing one[-] to two-step tasks can be vague and is not-well defined with the agency's rules and regulations[.]" (Doc. 6 at 960.) Plaintiff contends that "this very 'one[-] to two[-]step' language is critical key regulatory definitional language that Agency policy uses to classify Paragraph B criteria." (Doc. 13-1 at 3) (emphasis in original omitted). The Commissioner argues that, even if the ALJ committed legal error, any error is harmless because there are a sufficient number of positions in the national economy Plaintiff can perform.

Upon reviewing Plaintiff's medical history, Dr. Atkins opined Plaintiff "[c]an sustain CPP over two hours over typical work day/week for simple [one- to two-]step tasks." (Doc. 6 at 1295.) Dr. Petty similarly concluded Plaintiff was restricted from performing three or more tasks and that he retained the mental RFC to perform "[one- to two-]step tasks for [two]-hour periods over an [eight]-hour day/[forty]-hour week." *Id.* at

1334. ALJ Sutker was not required to adopt the one- to two-step limitation proposed by
the state agency consultants whom she found persuasive. *See Peter S. v. Comm'r of Soc.
Sec.*, 2024 WL 4343661, at *6 (D. Conn. Sept. 30, 2024) ("In resolving evidence, an ALJ
is entitled to accept parts of a doctor's opinion and reject others.") (citing *Veino v.
Barnhart*, 312 F.3d 578, 588-89 (2d Cir. 2002)). However, in considering the opinions of
Drs. Petty and Atkins, ALJ Sutker did not find they were contradicted by other medical
evidence in the record. As a result, the issue is whether she erred by modifying their
proposed limitations to "utilize[] policy compliant language." (Doc. 6 at 960.)

Multiple Agency policies and regulations utilize the term "one[-] to two-step
instructions." *McGriff v. Colvin*, 2017 WL 3142336, at *3 (D. Conn. July 25, 2017)
("Reasoning Level One is defined as the ability to '[a]pply commonsense understanding
to carry out simple *one- or two-step instructions*[.]'" (emphasis supplied) (quoting
*Dictionary of Occupational Titles*,
http://www.occupationalinfo.org/appendxc_1.html#III)); 20 C.F.R., Part 404, Subpart P,
App'x 1, § 12.00 E.1 ("This area of mental functioning refers to the abilities to learn,
recall, and use information to perform age-appropriate activities. Examples include:
Understanding and learning terms, instructions, procedures; following *one- or two-step
oral instructions* to carry out a task; . . ." (emphasis supplied)). ALJs also routinely
employ this terminology in RFC determinations. *See, e.g., Katrina H. v. Comm'r of Soc.
Sec.*, 719 F. Supp. 3d 282, 288 (W.D.N.Y. 2024) ("[Plaintiff] can perform simple routine
one[-] to two[-]step tasks but cannot perform complex work, defined as involving
multiple simultaneous goals or objectives or the need to set independent quality or
quantity performance standards."); *Daniel M. v. Kijakazi*, 2023 WL 154909, at *3 (D. Vt.
Jan. 11, 2023) ("Plaintiff can understand and remember simple, 1-2 step tasks[.]"
(alteration adopted)).

After considering the State Agency psychologists' opinions, ALJ Sutker
determined Plaintiff has the RFC "to perform light work . . . except [Plaintiff] . . . can
understand, remember, and carry out simple instructions and perform simple tasks for
two-hour blocks of time throughout the workday, consistent with regularly scheduled

breaks and lunch periods." (Doc. 6 at 955.) Her modification of the State Agency
psychologists' opinions to include "terms such as 'simple,' or 'detailed,'" resulted in an
RFC that departs significantly from the medical opinions ALJ Sutker found persuasive
because the two sets of terms are not synonymous. *See Christopher S. v. Comm'r of Soc.
Sec.*, 2025 WL 262236, at *12 (D. Vt. Jan. 22, 2025) ("As one district court in this
Circuit explained, there is a significant and now well-acknowledged difference between
an RFC limitation to one-to-two-step tasks and an RFC limitation to short, simple
instructions.") (internal quotation marks omitted) (quoting *McGriff*, 2017 WL 3142336,
at *3). This error was not harmless because the court cannot "adjust" the opinions to fit
the RFC or vice versa. *See Petersen v. Astrue*, 2 F. Supp. 3d 223, 234 (N.D.N.Y. 2012)
(stating that a court "may not 'create post-hoc rationalizations to explain the
Commissioner's treatment of evidence when that treatment is not apparent from the
Commissioner's decision itself[]") (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1263
(10th Cir. 2005)); *Daniel W. v. Kijakazi*, 2023 WL 7006789, at *11 (D. Vt. Oct. 25, 2023)
(finding "ALJ's omission of the limitation to one- to two-step tasks in [plaintiff's] RFC
determination [wa]s not harmless error[]" where "ALJ found 'persuasive' the
consultants' uniform opinion that Plaintiff was limited to one- to two-step tasks" and
"[t]he record contain[ed] no other medical opinion contradicting this opinion[]").

Because this court cannot find, as a matter of law, that "simple" and "one- to two-
steps" are equivalent, a remand for further proceedings regarding Plaintiff's RFC is
required. *See id.*

## 2.    The ALJ's Consideration of Plaintiff's GED Reasoning Levels.

Plaintiff argues that the ALJ also erred in dismissing his attorney's argument that
Plaintiff's GED reasoning levels conflicted with the jobs VE Kuuttila identified as ones
Plaintiff could perform.

> According to the SSA, [an] ALJ is encouraged to consider GED ratings that
> appear to conflict with a claimant's RFC[.] [An ALJ] do[es] not rely on
> these GED ratings to conclude whether a claimant can perform a particular
> occupation when [he or she] cite[s] occupations that demonstrate the ability
> to do other work. However, adjudicators should consider GED ratings that

10

may appear to conflict with the claimant's RFC and the cited occupation(s);
for example, an occupation with the GED reasoning level of 3 or higher for
a claimant who is limited to performing simple, routine, or unskilled tasks.

*Paw H. v. O'Malley*, 2024 WL 418792, at *6 (N.D.N.Y. Feb. 5, 2024) (quoting *Diaz v.
Colvin*, 2017 WL 1078229, at *16 (M.D. Pa. Mar. 22, 2017)). On remand, the ALJ shall
consider any discrepancy between Plaintiff's GED rating, RFC, and the occupations
available to him.

### 3.    The VE's Testimony and Opinions.

Plaintiff contends that the VE's testimony was contrary to Agency policy and that,
as a result, the ALJ should have rejected it. Pursuant to Agency policy, "SSA
adjudicators may not rely on evidence provided by a VE, VS, or other reliable source of
occupational information if that evidence is based on underlying assumptions or
definitions that are inconsistent with [the SSA's] regulatory policies or definitions." SSR
00-4P, 2000 WL 1898704, at *3 (Dec. 4, 2000).

VE Kuuttila testified that substantial gainful activity exists for an individual
limited to light work and stooping less than occasionally. *See* Doc. 6 at 1047-48. SSA
regulations explain that:

> The major difference between sedentary and light work . . . is that the
> frequent lifting or carrying of objects weighing up to [ten] pounds (which is
> required for the full range of light work) implies that the worker is able to
> do occasional bending of the stooping type; i.e., for no more than one-third
> of the workday to bend the body downward and forward by bending the
> spine at the waist.

SSR 83-14, 1983 WL 31254, at *4 (Jan. 1, 1983).

As a result:

> An ability to stoop occasionally, i.e., from very little up to one-third of the
> time, is required in most unskilled sedentary occupations. A *complete*
> inability to stoop would significantly erode the unskilled sedentary
> occupational base and a finding that the individual is disabled would
> usually apply, but restriction to occasional stooping should, by itself, only
> minimally erode the unskilled occupational base of sedentary work.

SSR 96-9P, 1996 WL 374185, at *8 (July 2, 1996) (emphasis in original).

11

SSA policies require adjudicators making an RFC determination to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996).

> When the extent of erosion of the unskilled sedentary occupational base is not clear, the adjudicator may consult various authoritative written resources, such as the DOT, the SCO, the **Occupational Outlook Handbook**, or **County Business Patterns**. In more complex cases, the adjudicator may use the resources of a vocational specialist or vocational expert.

SSR 96-9P, 1996 WL 374185, at *9 (emphasis in original).

In this case, ALJ Sutker posed two hypotheticals for VE Kuuttila which incorporated the range of limitations in her RFC determination. ALJ Sutker, however, did not specifically question the VE regarding the effect of the less than occasionally stooping limitation on the VE's conclusion that Plaintiff could perform light work. On remand, the ALJ should address this issue directly. *See, e.g., Gary G. v. Comm'r of Soc. Sec.*, 2019 WL 1499678, at *2 (Apr. 5, 2019) (finding "[t]he ALJ harmfully erred by failing to consult with the VE to determine which of the jobs, light or sedentary, would be ruled out by a restriction to 'rare stooping[]'" where plaintiff was limited to less than occasional stooping); *Molina v. Barnhart*, 2005 WL 2035959, at *8 (S.D.N.Y. Aug. 17, 2005) (finding ALJ erred by not addressing plaintiff's ability to stoop and bend because "courts have found social security claimants able to bend forward to a greater extent th[a]n [plaintiff] disabled"); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (finding ALJ erred by not resolving the conflict in determination that plaintiff, who had "limited ability to bend on account of his bad back[,]" could perform light work requiring plaintiff bend his waist occasionally).

12

## CONCLUSION

For the reasons stated above, Plaintiff's motion to reverse the decision of the Commissioner is GRANTED (Doc. 13), the Commissioner's motion to affirm is DENIED (Doc. 16), and the case is REMANDED for proceedings consistent with this Opinion and Order.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 28ᵗʰ day of August, 2025.

Christina Reiss, Chief Judge
United States District Court